UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA M. SHEPPARD,

                                   Case No. No. 19-13079

           Plaintiff,                   District Judge George Caram Steeh

v.                                       Magistrate Judge R. Steven Whalen

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Linda M. Sheppard brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 11] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 10] be DENIED.

## I.   PROCEDURAL HISTORY

On December 16, 2016, Plaintiff filed an application for DIB, alleging disability as of November 15, 2015 ECF No. 8 (Tr. 145).   Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on June 15, 2018 in Oak Park, Michigan (Tr. 28). Administrative Law Judge ("ALJ") Virginia Herring presided.   Plaintiff, represented by attorney Jennifer Alfonsi, testified (Tr. 31-49), as did Vocational Expert ("VE") Pauline Pegram (Tr. 49-56).   On October 31, 2018, ALJ Herring determined that Plaintiff was not disabled (Tr. 15-24).   On September 10, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-6).   Plaintiff filed suit in this Court on October 18, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born October 1, 1956, was 62 at the time of the  administrative decision (Tr. 24, 145).   She completed one year of college and received training in medical billing (Tr. 171).   She worked previously as a medical biller and billing manager (Tr. 172).   She alleges disability as a result of back problems, arthritis of the hip, depression, and a neurological condition of the right hand (Tr. 170).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony before the ALJ:

She lived by herself but was supported by her second husband who lived approximately two miles away (Tr. 32).   She and her husband had a cordial relationship but felt that it would be less stressful for their respective children if they lived apart (Tr. 32).

-2-

Plaintiff was able to drive short distances (Tr. 34-35). She admitted that she had collected unemployment insurance after ceasing work in 2015 but had limited her job search to a "simple" job (Tr. 35). She found a job where she was able to work from her home but quit due to her inability to sit for long periods or concentrate (Tr. 35-36). Her former billing jobs included one position that did not require lifting of more than 10 pounds (Tr. 37).

Plaintiff was unable to stand or sit for long periods and required periodic changes to a reclining position for 10 to 15 minutes every hour (Tr. 38-39). The back pain radiated to her pelvis and entire right leg (Tr. 39). She took Norco four times a day and Motrin "in between" (Tr. 40). The pain medication helped but did not eliminate her discomfort (Tr. 41).

Plaintiff began the day by walking for exercise then making coffee (Tr. 42). She then stretched, made a smoothie, took medication, then reclined (Tr. 42). After that, she got dressed and took her dog for a walk for approximately 30 minutes (Tr. 42). She later walked by herself (Tr. 43). She then used a heating pad, tidied the kitchen, and did laundry (Tr. 43). Her husband accompanied her to the grocery store, a fruit market, and Target on a weekly basis (Tr. 43-44). Her regular activities also included eating breakfast out with her husband, overnight visits with her adult children, and outings with her high school friends (Tr. 44). Plaintiff experienced difficulty bending, crouching, and squatting (Tr. 46).

In response to questioning by her attorney, Plaintiff restated that she was unable to sit for more than 20 minutes, after which she was required to stand or recline (Tr. 47). She was unable to stand for even five minutes, noting that it was easier to walk than stand in one place

(Tr. 47). She was unable to lift more than 10 pounds (Tr. 48). She received steroid injections every three to four months (Tr. 48).

### B. Medical Records

#### 1. Records Related to Plaintiff's Treatment[1]

August, 2014 imaging studies showed mild disc space narrowing at L3-L4, L4-L6, and L5-S1 (Tr. 724). Physical therapy records from the same month note good prognosis toward pain-free home and work activity (Tr. 655-658). A September, 2014 MRI of the lumbar spine showed borderline stenosis at L3-L4 with a disc bulge at L5-S1 with possible nerve root impingement at S1 (Tr. 650, 718). The following month, Steven Kotsonis, D.O. issued an off work note, stating that Plaintiff was unable to sit for "long periods of time" (Tr. 717).

July, 2015 mental health records note that the appointment was a "followup for anxiety and depression" (Tr. 226). The record notes prescriptions for Concerta, Xanax, Wellbutrin, and Ambify for the conditions of moderate anxiety, "minimal" depression, periodic insomnia, and Attention Deficit Disorder ("ADD") (Tr. 226). Plaintiff appeared alert with good hygiene and an anxious affect (Tr. 226). Cognition was normal with good eye contact (Tr. 226-227). The same month, Dr. Kotsonis noted Plaintiff's report of mild hip pain (Tr. 558). Imaging studies of the right hip showed slight narrowing of both hip joints

---

[1]

Records pertaining to Plaintiff's condition prior to the alleged onset of disability date of November 15, 2015 are included for background purposes only. Records concerning conditions unrelated to the application for benefits are omitted from discussion.

but no necrosis (Tr. 732).  In October, 2015, Plaintiff denied depression, anxiety, or sleep disturbances (Tr. 587).

Plaintiff underwent a series of epidural injections between November, 2015 and January, 2017 (Tr. 227-272).  November, 2015 records show a significant reduction in pain following her first injection, allowing her to sleep better, expand household activities, and walk for longer periods (Tr. 270).

November, 2015 records by Dr. Kotsonis note Plaintiff's report of "no complaints" with good energy and denial of depression (Tr. 327).  Plaintiff reported that she had difficulty falling asleep but slept six hours each night (Tr. 326).  December, 2015 records by Dr. Kotsonis note prescriptions for hydrocodone and ibuprofen for joint stiffness (Tr. 424).  A straight leg raising test was positive (Tr. 421).  She was diagnosed with osteoarthritis of the hip (Tr. 421).  March, 2016 neurological records note that Plaintiff did not require assistance in personal care, household chores, or yard work (Tr. 253, 261).  The following month, she denied depression, anxiety, or insomnia (Tr. 259).  July, 2016 records note a normal gait and affect (Tr. 398).  In September, 2016 Plaintiff exhibited back stiffness (Tr. 391).  She reported that her pain was exacerbated by sitting (Tr. 391).  October, 2016 records note a normal range of hip motion and full motor strength in the lower extremities (Tr. 251). December, 2016 records note a 70 percent improvement from the injections (Tr. 242, 245). The same month, Dr. Kotsonis noted symptoms of "mild" depression (Tr. 372).  Plaintiff reported good symptom control of Attention Deficit Hyperactivity Disorder ("ADHD") (Tr.

314).  Plaintiff reported that insomnia was relieved by medication (Tr. 314).

Plaintiff underwent additional epidural injections between March, 2017 and January, 2018 (Tr. 445-492).  May, 2017 records by Dr. Kotsonis note a "recheck" for insomnia and ADD but no current symptoms (Tr. 504). Plaintiff reported symptoms of moderate depression (Tr. 547).  August, 2017 imaging studies of the bilateral knees showed  osteoarthrosis without degenerative changes (Tr. 730-731).  November, 2017 records note the conditions of osteoarthritis of the bilateral knees, lumber radiculopathy, and spinal stenosis (Tr. 539). Plaintiff reported that she was "doing well with meds." (Tr. 539).

## 2.  Non-Treating Records

In April, 2017, Herman Daldin, Ph.D. performed a psychological consultative examination on behalf of the SSA, noting Plaintiff's report that because her former work was "overwhelmingly anxiety provoking" she was prevented from continuing work (Tr. 431). She reported that she had discontinued psychological counseling because she "no longer needed the treatment" (Tr. 431).  Dr. Daldin noted that it was "clear" that Plaintiff was "not working due to physical problems as opposed to mental health issues" (Tr. 431).  Plaintiff reported that she had "many friends," used the internet, and was able to drive herself to the evaluation (Tr. 432). She exhibited a "positive, bright, and upbeat" affect and mood (Tr. 432).  She did not appear depressed or anxious (Tr 432).  Dr. Daldin diagnosed Plaintiff with an adjustment disorder with anxiety and depression (Tr. 433).  He assigned her a "good" prognosis (Tr. 433-434).

The same day, Lasmi Manyam, M.D. performed a physical examination, noting Plaintiff's report of intermittent lower back and right hip pain (Tr. 436). Plaintiff reported "no improvement" from injections and pain after sitting for "a long time" (Tr. 436). She reported that she could sit for up to 20 minutes and that walking was "no problem" (Tr. 436). Dr. Manyam observed that Plaintiff was able to sit without discomfort (Tr. 437). The examination was neurologically unremarkable (Tr. 438). He noted "mild sciatica with long sitting" (Tr. 438). Plaintiff exhibited a normal range of motion and full muscle strength (Tr. 438). Dr. Manyam found that there "may be a slight limitation of long sitting due to the lower back pain and history of sciatica, on and off" (Tr. 438).

Also in April, 2017, Mira Krishnan, Ph.D. performed a non-examining review of the consultative and treating records pertaining to Plaintiff's psychological limitations, finding that symptoms of depression and anxiety were mild (Tr. 64-65). The same month, Thomas Flake, M.D. performed a non-examining review of the consultative and treating records (physical) on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk around six hours in an eight-hour workday; and push and pull without limitation (Tr. 66). Dr. Flake precluded the use of ladders, ropes, or scaffolds but otherwise found the ability to perform occasional postural activity (Tr. 67). He found that Plaintiff should avoid even moderate exposure to hazards such as machinery or heights (Tr. 68).

### C.  Vocational Testimony

VE Pegram classified Plaintiff's past work as a "billing typist" as semiskilled and exertionally sedentary (Tr. 150).  The VE also noted that Plaintiff performed "composite" work entailing the duties of the following jobs: billing manager, skilled/sedentary; director of medical records, skilled/light; and general manager, skilled/sedentary (light as performed)[2] (Tr. 50-51).

ALJ Herring then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> This person can work at the light exertion level.  They can sit for six hours in an eight-hour workday, but they can stand and walk for only four hours. They may occasionally climb stairs or ramps, never ladders, ropes, or scaffolds. They can  occasionally balance and occasionally stoop.  Never kneel, crouch, or crawl.  They have to avoid dangerous machinery and unprotected heights. Can this individual perform the past work? (Tr. 52).

The VE testified that the above limitations would allow for all of Plaintiff's past relevant work (Tr. 53).  The VE stated that if the same individual were limited to sedentary work, she could still perform the work of a billing clerk but not the "composite" supervisory

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

position (Tr. 53).  The VE testified further that if the individual originally described were also limited to "simple and routine tasks," none of the past relevant work could be performed (Tr. 53).  The VE testified that the billing position would require the individual to be frequently to constantly on task, specifically, that the job would require the individual to be on task 90 percent of the workday (Tr. 54).  She stated that her testimony was based on the information found in the *Dictionary of Occupational Titles* ("*DOT*"); *Selected Characteristics of Occupations* ("*SCO*"); and her own professional experience (Tr. 54-55).  In response to questioning by Plaintiff's attorney, the VE testified that the job of billing clerk required "fairly constant sitting" (Tr. 55).

### D.  The ALJ's Determination

Citing the medical transcript, ALJ Herring found that Plaintiff experienced the severe impairments of "osteoarthritis of right hip and both knees [and] degenerative changes of the lower lumbar spine with borderline spinal stenosis and sciatica," but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-19).  The ALJ  found that the conditions of hypertension, hypothyroidism, ulnar nerve pain of the right hand, obesity, and depression were non-severe (Tr. 17-18).  She found that the psychologically based limitations were uniformly mild (Tr. 18-19).

ALJ Herring determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [She] can sit for 6 hours in an 8 hour workday but can stand and/or walk for only 4 hours in an 8 hour workday; may occasionally climb stairs or ramps, but never climb ladders, ropes, or scaffolds; can occasionally balance or stoop, but may never kneel, crouch, or crawl; must avoid environments with dangerous machinery and unprotected heights (Tr. 19).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a billing clerk as well as the composite job combining the job duties of billing manager supervisor; scheduling manager/general manager administrative services; and medical records administrator/manager, director of medical records (Tr. 23, 52-53).

In support of the RFC for light work, the ALJ cited treating records showing a normal range of motion and gait (Tr. 20-21). She noted that Plaintiff's pain was controlled with Norco, allowing for a significant range of activity (Tr. 21). The ALJ cited Dr. Manyam's consultative finding of only "slight limitation of long sitting due to low back pain . . ." and Plaintiff's report that she did not have problems walking (Tr. 21). The ALJ acknowledged a September, 2014 MRI of the lumbar spine showing possible nerve root impingement at S2 (Tr. 22). She noted that while Plaintiff alleged that she was unable to sit for more than 20 minutes at a time, the treatment records did not show that Plaintiff reported such a limitation to her treating sources (Tr. 22).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where  substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."

-11-

*Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

Plaintiff takes issue with the finding that she could perform exertionally light work, arguing that the ALJ "failed to create an accurate Residual Functional Capacity at Step Five" of the sequential analysis.  *Plaintiff's Brief,* ECF No. 10, PageID.780.

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 404.1545(a)(1)). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996).  An ALJ is permitted to draw from multiple medical sources in whole or part in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); SSR 96-8p at *2.

As a threshold matter, Plaintiff's argument that the ALJ made an "erroneous Step Five determination" is itself erroneous.  ECF No. 10, PageID.780.    The ALJ's analysis ended at Step Four with the finding that Plaintiff could perform her past relevant work (Tr. 23-24).  In the ALJ's sequential analysis, the RFC preceded and formed the basis of Step Four finding (Tr. 19).  Plaintiff appears to conflate the RFC with the hypothetical question posed to the VE at the administrative hearing, arguing, in effect that the hypothetical question did not include all of

Plaintiff's relevant limitations.  ECF No. 10, PageID.780 (*citing Varley v. Sec'y of Health & Human Serv.,* 820 F.2d 777, 779 (6th Cir. 2003))(vocational testimony given in response to incomplete hypothetical modifiers does not meet Commissioner's Step Five burden to show that claimant could perform "other" work).  However, the "Step Five" rule set forth in *Varley* is inapplicable here.  In the present Step Four determination, it is Plaintiff's burden to show that she is unable to perform her past relevant work.  *Her, supra,* 203 F.3d at 391–92.  Thus, while the RFC is essentially identical to the hypothetical question forming the basis of the VE's job testimony, it is Plaintiff who must show that the RFC is not supported by substantial evidence (Tr. 19, 23, 52-52).

In support of Plaintiff's contention that the RFC did not include all of her physical limitations she cites her "documented limitations" resulting from the hip, back, and knee conditions.  ECF No. 10, PageID.780.  However, the RFC for a range of exertionally light work limited to occasional stair/ramp climbing, balancing and stooping; a preclusion on kneeling, crouching, or crawl and use of ladders, ropes, or scaffolds; and avoidance of  dangerous machinery is generously supported and well explained (Tr. 20-22).   Despite Plaintiff's allegations of disability, her treatment was limited to pain medication, injections, and sporadic physical therapy.  She reported that the condition did not prevent her from performing a wide range of household chores, social activities, and driving (Tr. 42-44, 253, 261).

On a related note, the ALJ did not err in rejecting Plaintiff's claim that she was unable to sit for more than 20 minutes at one time.  The ALJ acknowledged that while Dr. Kotsonis opined in 2014 that Plaintiff could not sit for "long periods of time," Plaintiff's discrete claim that she could not sit for more than 20 minutes was not reflected in the treating records (Tr. 22). While Dr. Manyam, a consultative source, memorialized Plaintiff's "20 minutes" claim (Tr. 436) the ALJ is correct that the treating records (albeit reflecting some limitation in sitting) do not support the alleged need for a position change after sitting only 20 minutes.

The record contains additional support for the RFC for a limited range of light work. Dr. Manyam's consultive examination records include the observation that Plaintiff was able to sit without discomfort (Tr. 437).  He found that Plaintiff might experience "mild sciatia with long sitting" and only "a slight limitation of long sitting" (Tr. 438).  The neurological examination was normal with full muscle strength and a range of motion (Tr. 438).  The ALJ did not err in finding that Plaintiff's claim of disabling limitation in sitting was also undermined by the exclusively conservative treatment (Tr. 23).  *See Tonnous v Comm'r of Soc. Sec.*, 2018 WL 914646, at *5 (S.D. Ohio, February 16, 2018), report and recommendation adopted, 2018 WL 1175295 (S.D. Ohio, March 5, 2018)(*quoting McKenzie v. Comm'r of Soc. Sec.,* 2000 WL 687680, at *4 (6th Cir. May 19, 2000))("'Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment'" consisting only of injections and sporadic physical therapy).  The records show that Plaintiff reported satisfactory results from the combination of injections and pain medication (Tr. 242, 245, 253, 261, 270).

Finally, Plaintiff faults the ALJ for failing to acknowledge the record impressions of insomnia and ADD.  To be sure, the ALJ did not find that either condition was a severe or non-severe condition.  However, the transcript indicates that the conditions were at worst mild.  The scattered references to either insomnia or ADD/ADHD from November, 2015 forward do not support the conclusion that either condition created any degree of work-related limitation. November, 2015 records note Plaintiff's report of good energy, denial of depression, and the ability to sleep six hours each night (Tr. 326).  March, 2016 records note a denial of insomnia (Tr. 259).  December, 2016 records note good control of ADHD symptoms and that insomnia was relieved with medication (Tr. 314).  A consultative psychological examination was negative for any significant concentrational limitation (Tr. 432-434).  Moreover, the ALJ's thorough explanation and support for her finding that the psychological limitations were exclusively mild does not provide grounds for remand (Tr. 18-19).  She noted that Plaintiff could prepare meals, attend appointments on her own, recount her health history, drive, take medication, and did not exhibit or report lack of concentration or distractibility to her treating sources (Tr. 18).

Because the ALJ's decision as to both Plaintiff's physical and psychological abilities was well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

-16-

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 11] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 10] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

Date: November 5, 2020                          s/R. Steven Whalen_____
                                                R. Steven Whalen
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 5, 2020 electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla\_\_\_\_\_
                                                Case Manager